United States District Court
Southern District of Texas
**ENTERED**
February 04, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| SUZANNE S. RON, § | |
| § | |
| Plaintiff. § | |
| § | |
| VS. § | CIVIL ACTION NO. 3:19-CV-00211 |
| § | |
| AVISHAI RON, INDIVIDUALLY § | |
| AND AS TRUSTEE OF THE § | |
| SUZANNE AND AVI RON 2012 § | |
| CHILDRENS' TRUST and § | |
| GARY STEIN, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Defendant Gary Stein's Motion to Dismiss Plaintiff's First Amended Complaint under Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss"). *See* Dkt. 26. Having considered the Motion to Dismiss, responsive briefing, oral argument, applicable law, and the record, I recommend that the Motion to Dismiss be **GRANTED**.

## BACKGROUND

Plaintiff Suzanne S. Ron ("Suzanne") and Defendant Avishai Ron ("Avi") married in 1994. At year-end 2012, Suzanne and Avi created trusts for estate planning purposes. This lawsuit centers on the trust Suzanne, as Grantor (or Settlor), created: the Avi and Suzanne Ron 2012 Children's Trust ("Trust"). Through the Trust, Suzanne appointed Avi as Trustee and Defendant Gary Stein as Trust Protector. Suzanne also designated her and Avi's three kids—Daniel Ron, Alexander Ron, and Adam Lawrence Ron—and "any

children subsequently born to me or adopted by me" as "lifetime beneficiaries" of the Trust. Dkt. 36 at 12.

Suzanne filed for divorce in 2014, and a final decree was signed in April 2017. In this lawsuit, Suzanne alleges that, prior to the divorce finalization, Avi improperly transferred large sums from their community estate to the Trust. Suzanne also maintains that Stein assisted Avi in these transfers.

The Trust states: "The purpose of a Trust Protector is to direct my[1] Trustee in certain matters concerning the trust, and to assist, if needed, in achieving my objectives as expressed by the other provisions of my estate plan hereunder." *Id.* at 17. The Trust explicitly empowers the Trust Protector to carry out several duties. Relevant here, the Trust provides:

> The Trust Protector may add as a beneficiary of any trust established hereunder (i) any descendant of my husband's parents; (ii) any spouse or surviving spouse of any such descendant (other than me); and (iii) any charity, subject to any limitations the Trust Protector determine appropriate. The Trust Protector may also remove any beneficiary who was added under this subsection.

*Id.* at 22. Relying on this power to add a beneficiary, on June 27, 2017, Stein appointed Avi as a beneficiary of the Trust. *See* Dkt. 18-1. Suzanne contends that Stein's "addition of Avi as purported beneficiary was not [done] in compliance with the Trust" and was "contrary to [her] intent." Dkt. 18 at 7. In addition, Suzanne alleges that Stein's appointment "of Avi as purported beneficiary was done to complete Avi's fraud and

---

[1] To be clear, the first-person pronouns in the Trust refer to Suzanne, the Settlor of the Trust.

fraudulent transfers of various assets from the community to the Trust during the divorce case." *Id.*

Suzanne specifically alleges that Avi fraudulently disposed of community property in two waves: pre-divorce and post-divorce. Pre-divorce, Suzanne contends that Avi "caused assets in which Suzanne and Avi held community interests to be transferred to the Trust prior to the final divorce decree in the divorce case." *Id.* at 4. Suzanne refers to these pre-divorce assets as the "Loaned Assets." *Id.* Suzanne also alleges that post-divorce, but during a pending arbitration related to the divorce, "Avi transferred various assets and distributed over $4 million he received from the transfer transactions." *Id.* at 8. This allegedly included "$1.3 million" that Avi "transferred . . . to the Trust's counsel in Israel to make a payment on a real estate purchase contract Avi claimed to be a Trust contract he had entered into during the divorce case." *Id.* This single $1.3 million transfer is the only post-divorce transfer Suzanne specifically mentions in the Amended Complaint.

Based on Stein's alleged role in helping Avi accomplish his plot, Suzanne asserts three claims against Stein: civil conspiracy based on conversion; civil conspiracy to violate the Texas Uniform Fraudulent Transfer Act ("TUFTA"), TEX. BUS. & COMM. CODE § 24.001 *et seq.*; and breach of fiduciary duty. Stein moves to dismiss all three claims.[2]

---

[2] In the Motion to Dismiss, Stein also presents arguments as if Suzanne asserted direct claims against him for conversion and violating TUFTA, as opposed to mere civil conspiracy claims. At oral argument, Suzanne conceded that she did not bring direct claims of conversion and

## RULE 12(b)(6) MOTION TO DISMISS STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This pleading standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). Under Rule 12(b)(6), a party may "move for dismissal for a failure to state a claim upon which relief can be granted." *Lemieux v. Am. Optical Corp.*, 712 F. App'x 409, 412 (5th Cir. 2018) (internal quotation marks and citation omitted). "The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Lowrey v. Tex. A&M Univ. Syst.*, 117 F.3d 242, 247 (5th Cir. 1997).

Dismissal is appropriate "when a plaintiff fails to allege sufficient facts that, taken as true, state a claim that is plausible on its face." *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011). However, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks and citation omitted). "Determining whether the plausibility standard has been met is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

---

TUFTA violations against Stein. Thus, I do not address Stein's arguments that assume otherwise.

## CIVIL CONSPIRACY

**A.    LEGAL STANDARD**

"An action for civil conspiracy has five elements: (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017).

"A defendant's liability for civil conspiracy depends on participation in an underlying tort for which the plaintiff seeks to hold the defendant liable." *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 762 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). "[M]erely proving a joint intent to engage in the conduct that resulted in the injury is not sufficient to establish a cause of action for civil conspiracy." *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (internal quotation marks and citation omitted). Indeed, as explained by the Texas Supreme Court, an alleged conspirator can "only be liable for conspiracy if he agreed to the *injury* to be accomplished" because "agreeing to the *conduct* ultimately resulting in injury is not enough." *Chu v. Hong*, 249 S.W.3d 441, 446 (Tex. 2008). And, importantly, "[a]n actionable conspiracy must consist of acts that would have been actionable against the conspirators individually." *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 381 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citing *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581 (Tex. 1963)).

**B.     ANALYSIS**

Stein argues that Suzanne's civil conspiracy claims must fail for two reasons. First, Stein contends that based on *Chu*, Suzanne's civil conspiracy claims fail as a matter of law "[b]ecause Texas law bars tort claims against a third party where a spouse has wrongfully transferred community assets." Dkt. 26 at 15. Second, Stein argues that the conspiracy claim based on the violation of TUFTA must fail because "[u]nder Texas law, a claimant cannot recover from a co-conspirator for fraudulent transfer if the defendant has not received or acquired an interest in the transferred property." *Id.* at 22.

I address each of Stein's arguments in turn.[3]

**1.     Does *Chu* bar Suzanne's civil conspiracy claims?**

In *Chu*, a husband sold community property and gave the sales proceeds to his parents. *See* 249 S.W.3d. at 443. He then filed for divorce. The wife sued her husband, for defrauding the community estate, and her husband's attorney, for conspiring with him to defraud her. The court held that the husband was not liable because "there is no independent tort for wrongful disposition by a spouse of community assets." *Id.* at 444 (quoting *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998)). The Texas Supreme Court explained that the "sole method" for adjudicating such a claim is when the court accounts for it in the division of community property upon divorce. *Id.* at 445 (citing *Schlueter*, 975 S.W.2d at 588). Because the husband could not be held liable in tort, the

---

[3] In addition to the arguments I address, Stein also argues that he was authorized to appoint Avi as a beneficiary, so he "cannot, as a matter of law, be held liable for conspiracy based on this lawful act." Dkt. 26 at 20. However, I do not reach this argument because I find that Suzanne's conspiracy claims fail for other reasons explained below.

6

*Chu* court held that the attorney similarly could not be held liable for conspiring to commit a tort. *See id.* at 447. As explained by one court: "Under *Chu*, [a plaintiff-spouse] has no independent tort claim against [a defendant-spouse] for fraud associated with transferring [community property] nor against [a third-party defendant] for conspiring with [the defendant-spouse] to do so." *Sun Life Assurance Co. of Can. v. Hieb*, No. 3:16-CV-03349-M, 2017 WL 5593503, at *2 (N.D. Tex. Nov. 21, 2017).

It is certainly clear that Suzanne's conspiracy claims relate to Avi's transfers of certain Trust assets. Thus, based on my reading of *Chu*, the critical question I must answer is whether the assets at the heart of each of Suzanne's conspiracy claims are community property? With respect to Suzanne's conspiracy claim based on conversion, the answer is obvious. In the conversion section of her Amended Complaint, Suzanne discusses only the conversion of the "Loaned Assets." Dkt. 18 at 14–15. As mentioned above, Suzanne defines Loaned Assets as "assets in which Suzanne and Avi held community interests." Clearly, Suzanne has alleged that the Loaned Assets are community property. Thus, I have no problem concluding that under *Chu,* Suzanne's civil conspiracy claim based on conversion must fail. *See Barnett v. Perfect Search Corp.*, No. 3:14-CV-2840-D, 2015 WL 4602961, at *4 (N.D. Tex. July 31, 2015) ("The court is aware of no Texas decision that undermines the conclusion that [*Chu* and *Schlueter* are applicable] where one spouse seeks to recover against a third party for community property taken by the other spouse.").

Suzanne's civil conspiracy based on the violation of TUFTA is more complicated. In the TUFTA section of the Amended Complaint, Suzanne discusses both the Loaned

7

Assets and the $1.3 million that Avi allegedly transferred to the Trust's counsel in Israel. To the extent that the claim relies on the Loaned Assets, *Chu* obviously applies. However, the nature of the $1.3 million is not clear. As such, at this motion to dismiss stage, I decline to apply *Chu* to the civil conspiracy claim based on the violation of TUFTA. *See Lowrey*, 117 F.3d at 247 ("The complaint must be liberally construed in favor of the plaintiff.").

### 2. Did Stein receive a property interest in the transferred community property?

In *Mack v. Newton*, the Fifth Circuit held that the precursor to TUFTA did not allow for recovery from a party who was not a direct or indirect recipient of a fraudulent transfer. 737 F.2d 1343, 1361 (5th Cir. 1984) ("Although we have found no Texas decision in [sic] point, we are persuaded that the Texas statute, like the Bankruptcy Act, does not provide for recovery other than recovery of the property transferred or its value from one who is, directly or indirectly, a transferee or recipient thereof."). Subsequent state and federal decisions support this conclusion. *See F.D.I.C. v. White*, No. 3:96-CV-0560-P, 1998 WL 120298, at *2 (N.D. Tex. Mar. 5, 1998) (holding TUFTA "do[es] not create personal liability on the part of a co-conspirator for fraudulent conveyances to an extent or in an amount beyond property which a co-conspirator actually receives or in which he acquires an interest") (collecting cases); *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 386–87 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (recognizing a claim for conspiracy to commit fraudulent transferbut acknowledging *Mack* as restricting the claim to defendants who were parties to the transfer).

Consideration of other states' fraudulent transfer laws also supports this conclusion.[4] "A majority of jurisdictions do not permit claims based on derivative liability for fraudulent transfers. Thus, restricting TUFTA liability to parties to the transfer is in line with other jurisdictions' interpretations of analogous statutes." *Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP*, No. 3:12-CV-4641-N, 2014 WL 12572881, at *11 (N.D. Tex. Dec. 17, 2014) (citations omitted) (collecting cases).

Here, Suzanne has not alleged that Stein was a transferee of the Loaned Assets or the $1.3 million that Avi transferred to counsel for the Trust. Nor has Suzanne alleged that Stein personally benefited in any way from the transfers. As argued by Stein, Suzanne's "sole allegation is that Stein acted with Avi to fraudulently transfer assets to the Trust (although she fails to allege any facts showing that Stein did anything, or could have done anything, to facilitate these transfers, particularly given that Avi was already a Trustee). The Trust, therefore, is the transferee and proper defendant under TUFTA." Dkt. 26 at 23.

In light of Suzanne's deficient allegations and "[g]iven the weight of authority concluding that TUFTA does not provide for secondary liability," I find that Suzanne's conspiracy claim based on the violation of TUFTA must be dismissed. *Official Stanford Inv'rs Comm.*, 2014 WL 12572881, at *11. *See also BSG Clearing Sols., N. Am., L.L.C. v. McKay*, No. SA-17-CA-57-FB (HJB), 2017 WL 11207327, at *4 (W.D. Tex. Oct. 4,

---

[4] TUFTA is intended to be interpreted consistently with analogous statutes in other jurisdictions. *See* TEX. BUS. & COM. CODE § 24.012 ("This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it.").

2017) ("As Plaintiffs have failed to state a claim against Defendants as direct or indirect recipients of a fraudulent transfer, they have failed to state a claim for relief under TUFTA.") (internal quotation marks and brackets omitted).

\*\*\*

In sum, Suzanne's civil conspiracy claim based on conversion fails under *Chu*, and her civil conspiracy claim based on the violation of TUFTA fails because she did not allege that Stein was a direct or indirect recipient of the alleged fraudulent transfers.

## BREACH OF FIDUCIARY DUTY

A. **LEGAL STANDARD**

To establish a claim for breach of fiduciary duty, plaintiff must show: (1) a fiduciary relationship between plaintiff and defendants, (2) breach of the fiduciary duty by defendants, and (3) injury to plaintiff or benefit to defendant as a result of the breach. *See Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007).

Texas recognizes two types of fiduciary relationships, formal and informal. A formal fiduciary relationship arises as a matter of law in certain relationships, such as attorney-client, partnership, and trustee relationships. *See Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005); *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). "An informal fiduciary relationship can arise from a moral, social, domestic or purely personal relationship of trust and confidence, but to impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to and apart from the agreement made the basis of the suit." *Anglo-Dutch Petroleum Int'l, Inc. v. Smith*, 243 S.W.3d 776, 781 (Tex. App.—Houston [14th] 2007, pet. denied). Not

10

every relationship involving a high degree of trust and confidence rises to a fiduciary relationship. *See Meyer*, 167 S.W.3d at 330.

**B.    ANALYSIS**

Suzanne alleges that a formal fiduciary relationship existed between herself, as Settlor of the Trust, and Stein, as the Trust Protector, based on the express terms of the Trust. *See* Dkt. 18 at 15–16. Suzanne also alleges that an informal fiduciary relationship existed between herself and Stein based on "a relationship of trust and confidence," as evidenced by the terms of the Trust and "Stein['s] accept[ance of the] appointment" as Trust Protector. *Id.* at 16. Suzanne claims Stein breached his fiduciary duty.

Stein moves to dismiss, arguing that he has neither a formal nor informal fiduciary relationship with Suzanne.[5] To decide this dispute, I must confront several questions. In the interest of clarity, I will do so below.

### 1.    What is a trust protector?

The trust protector's role is relatively new in modern trusts. Thus, "there is little authority discussing the role of trust protectors, which the [Texas] Trust Code only recognized in 2015." *In re Macy Lynne Quintanilla Tr.*, No. 04-17-00753-CV, 2018 WL 4903068, at *5 (Tex. App.—San Antonio Oct. 10, 2018, no pet.) (citing TEX. PROP. CODE § 114.0031). The Texas Trust Code provides that a trust protector has only the power and authority granted to him by the trust terms, which may include:

---

[5] Stein also argues, to the extent that a formal fiduciary relationship exists, the Trust contains an exculpatory clause that would also warrant dismissal of Suzanne's breach of fiduciary duty claim. Because I ultimately find that no such relationship exists, I do not reach this argument.

(1) the power to remove and appoint trustees, advisors, trust committee members, and other protectors;

(2) the power to modify or amend the trust terms to achieve favorable tax status or to facilitate the efficient administration of the trust; and

(3) the power to modify, expand, or restrict the terms of a power of appointment granted to a beneficiary by the trust terms.

TEX. PROP. CODE § 114.0031(d). *See also In re Macy Lynne Quintanilla Tr.*, 2018 WL 4903068, at *5. The Texas Trust Code recognizes that a trust protector may be a fiduciary or nonfiduciary. *See* TEX. PROP. CODE § 114.0031(e).

### 2. Did the Trust create a formal fiduciary relationship between Stein and Suzanne?

Suzanne contends that the Trust created a formal fiduciary relationship between herself and Stein. To be sure, the Trust expressly states that the "Trust Protector's authority is conferred in a fiduciary capacity." Dkt. 36 at 17. But, the mere existence of Stein's fiduciary capacity, does not mean that Stein had a fiduciary relationship with Suzanne. At oral argument, Suzanne's counsel made this very point and directed my attention to Section 4.01 of the Trust as indicating that Stein's fiduciary duty was owed to Suzanne.

In pertinent part, Section 4.01 of the Trust provides: "The purpose of a Trust Protector is to direct my Trustee in certain matters concerning the trust, and to assist, if needed, in achieving my objectives as expressed by the other provisions of my estate plan hereunder." *Id.* In Suzanne's view, the use of "my objectives" and "my estate plan hereunder" demonstrates that the Trust Protector's duties are owed to her. I disagree.

In my view, nothing in Section 4.01 of the Trust creates a fiduciary relationship between Stein and Suzanne. If anything, the provision strongly suggests that the fiduciary relationship is between Stein and the Trustee—who Stein is to "direct" and "assist"—or perhaps, between Stein and the Trust—which contains Suzanne's memorialized objectives. *Id.* The mere fact that Section 4.01 references Suzanne's objectives means nothing when the Trust explicitly states that "[a]ll provisions of this agreement are to be construed to accomplish these objectives." *Id.* at 10. Given this reality, literally every provision in the Trust is expressly intended to achieve Suzanne's objectives. Surely, this does not mean that every individual implicated by a given provision has entered a fiduciary relationship with Suzanne.

In the Amended Complaint, Suzanne also alleges that Section 4.09 of the Trust "expressly recognizes the fiduciary character of Stein's duties." Dkt. 18 at 16. In pertinent part, Section 4.09 provides:

> To the extent that I have provided in this agreement that a Trust Protector holds any power or authority in a fiduciary capacity, the Trust Protector has no general duty to monitor or remain informed about the trust. Specifically, and not in limitation of the foregoing, the Trust Protector has no duty to investigate the action or inactions of the Trustee, to audit the books of the trust, to review the investments of the trust, or to evaluate the performance of the trust portfolio, unless at least one trust beneficiary or some other interested party (i) files a written complaint with the Trust Protector alleging a breach of trust and detailing the matters the Trust Protector should investigate, audit, review, or evaluate, or (ii) requests an action that I have authorized the Trust Protector to perform.

> If the Trust Protector possesses the power to direct, consent to, or veto the actions of a Trustee described in the written complaint, I direct that the Trust Protector defer to the Trustee's judgment except in those instances in which the Trust Protector can find no rational basis for the Trustee's actions, or failure to act, and the Trust Protector shall only suffer liability for failing to act if the trust suffers monetary loss and
>
>> the Trust Protector made no reasonable inquiry when alerted that the Trustee might have breached the Trustee's fiduciary duties; or,
>>
>> even if the Trust Protector made a reasonable inquiry, no other reasonable person would have failed to take action against the Trustee under those circumstances.

Dkt. 36 at 19. Nothing in this language implies or even suggests the existence of a fiduciary relationship between Stein and Suzanne. Indeed, the provision clearly states that only a "trust beneficiary or some other interested party" can file a complaint capable of getting the Trust Protector to act in accordance with the provision. *Id.* It is not credible that such language reflects a fiduciary relationship with Suzanne, when she is neither a trust beneficiary nor an interested party. *See id.* at 9 ("I retain no right, title or interest in the income or principal of this trust or any other incident of ownership in any trust property."); *Lee v. Rogers Agency*, 517 S.W.3d 137, 159–60 (Tex. App.—Texarkana 2016, pet. denied) ("[A] settlor who under the terms of the Trust does not manage any of the aspects of the Trust and does not stand to inherit any of the trust assets is not an 'interested person' who has standing to bring an action against a trustee or to bring other proceedings related to a trust under the Texas Property Code.") (internal quotation marks, ellipses, brackets, and citation omitted).

Accordingly, I find that the Trust did not create a fiduciary relationship between Stein and Suzanne. But this does not end my inquiry.

### 3. Does Texas law create a formal fiduciary relationship between Stein and Suzanne?

Though not argued by the parties, I also considered the provision of the Texas Trust Code that mentions trust protectors and their fiduciary duty.[6] Section 114.0031(a)(1) of the Texas Trust Code states: "'Advisor' includes protector." TEX. PROP. CODE § 114.0031(a)(1). Section 114.0031(e) then provides:

> If the terms of a trust give a person the authority to direct, consent to, or disapprove a trustee's actual or proposed investment decisions, distribution decisions, or other decisions, the person is an advisor. An advisor is a fiduciary regardless of trust terms to the contrary except that the trust terms may provide that an advisor acts in a nonfiduciary capacity if:
>
>> (1) the advisor's only power is to remove and appoint trustees, advisors, trust committee members, or other protectors; and
>>
>> (2) the advisor does not exercise that power to appoint the advisor's self to a position described by Subdivision.

*See* TEX. PROP. CODE § 114.0031(e). This seems to be the only provision in the Texas Trust Code that discusses the fiduciary duty owed by a trust protector. Notably, the section discusses the trust protector in his role as advisor to the trustee. This suggests that the fiduciary relationship is between Stein (Trust Protector) and Avi (Trustee)— again, or perhaps, between Stein (Trust Protector) and the Trust itself. In other words, Texas law does not create a formal fiduciary relationship between Stein and Suzanne.

In sum, I find that neither the Trust nor Texas law creates a fiduciary relationship between Stein, as Trust Protector, and Suzanne, as Settlor of the Trust. I now turn to the allegation of an informal fiduciary relationship.

---

[6] At oral argument, neither party mentioned this Texas Trust Code provision.

> 4. **Did Suzanne adequately allege the existence of an informal fiduciary relationship between herself and Stein?**

Stein argues that "Suzanne failed to plead the existence of an informal fiduciary relationship arising separate and apart from the Trust," so her "claim that Stein breached fiduciary duties owed under an informal fiduciary relationship (between Suzanne and Stein) . . . fails as a matter of law." Dkt. 26 at 29 (emphasis omitted).

In her response to Stein's Motion to Dismiss, Suzanne does not contest the factual shortcomings of her allegations. Instead, she argues that existence of an informal fiduciary relationship is a fact question that is not subject to hard and fast lines. *See* Dkt. 35 at 30. Suzanne is right that the existence of a fiduciary relationship is fact intensive. *See Trostle v. Trostle*, 77 S.W.3d 908, 914 (Tex. App.—Amarillo 2002, no pet.) ("The existence of . . . a[n] [informal fiduciary] relationship is determined from the actual facts of the relationship between the persons."). But this proposition of law does not save Suzanne's claim.

Under Texas law "to impose an informal fiduciary duty in a business transaction, **the special relationship of trust and confidence must exist prior to and apart from the agreement made the basis of the suit**." *Anglo-Dutch*, 243 S.W.3d at 781 (emphasis added). In the Amended Complaint, Suzanne alleges the following concerning the existence of an informal fiduciary relationship with Stein:

> [A]n informal fiduciary relationship exists between Stein and Suzanne. Suzanne and Stein had a relationship of trust and confidence. As expressly noted in the Trust instrument, Suzanne trusted Stein to carry out Suzanne's estate plan and to ensure the proper functioning of the Trust she established for the well-being and benefit of her three sons. Suzanne's trust was

16

> reasonably justified — Stein accepted his appointment thereby acknowledging his fiduciary obligations.

Dkt. 18 at 16. Suzanne makes no mention of a special relationship of trust and confidence that existed prior to, and apart from, the Trust at issue and fails to allege facts from which I can infer that there was such an informal fiduciary relationship. Accordingly, under Texas law, Suzanne has not alleged the existence of an informal fiduciary relationship.

***

In sum, because Suzanne has failed to adequately allege the existence of a fiduciary (formal or informal) relationship with Stein, she has failed to state a breach of fiduciary duty claim upon which relief can be granted, and this claim must be dismissed.

## CONCLUSION

For the reasons explained above, I **RECOMMEND** that the Motion to Dismiss (Dkt. 26) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 4th day of February, 2020.

_____

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE