United States District Court
Southern District of Texas
**ENTERED**
February 05, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| SUZANNE S. RON, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:19-CV-00211 |
| | § | |
| AVISHAI RON, INDIVIDUALLY | § | |
| AND AS TRUSTEE OF THE | § | |
| SUZANNE AND AVI RON 2012 | § | |
| CHILDRENS' TRUST and | § | |
| GARY STEIN, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Defendant Avishai Ron's Motion to Compel Arbitration and Motion to Stay ("Motion to Arbitrate"). *See* Dkt. 31. Having considered the motion, responsive briefing, oral argument, record, and applicable law, I recommend that the Motion to Arbitrate be **GRANTED.**

## BACKGROUND

Plaintiff Suzanne S. Ron ("Suzanne") and Defendant Avishai Ron ("Avi") married in 1994. At year-end 2012, Suzanne and Avi created two trusts: the Avi and Suzanne Ron 2012 Children's Trust ("Trust") and the Suzanne Ron 2012 Family Trust.

Suzanne filed for divorce in 2014. A final decree of divorce (the "Decree") was signed in the divorce case on April 13, 2017, dividing the marital estate and awarding Suzanne a $19 million equalization judgment. Avi appealed the Decree on several grounds.

In October 2017, Avi and Suzanne mediated their disputes before Alan Levin ("Levin"). At the end of the mediation, Avi and Suzanne executed a Confidential Mediated Settlement Agreement ("MSA"). *See* Dkt. 32. In the MSA, Suzanne agreed to accept a smaller equalization judgment based on a defined payment schedule and let Avi become trustee of the Trust. Avi agreed to no longer appeal the Decree. Avi and Suzanne both agreed that each would "retain all other assets as set forth in the Final Property Division and Rendition." *Id.* at 3. The MSA also includes provisions related to the release and arbitration of future disputes.

After signing the MSA, Avi and Suzanne began to dispute their obligations under the MSA. In 2018, consistent with the MSA, Avi's counsel and Suzanne's counsel attempted to schedule an arbitration with Levin. Avi and Suzanne failed to agree on a suitable arbitration date. Ultimately, Avi sought and obtained an order compelling he and Suzanne to arbitration before Levin. That arbitration proceeding is still ongoing.

This lawsuit is about Avi's alleged improper transfers from the community estate to the Trust. Suzanne specifically alleges that Avi fraudulently disposed of community property in two waves: pre-divorce and post-divorce. Pre-divorce, Suzanne contends that Avi "caused assets in which Suzanne and Avi held community interests to be transferred to the Trust prior to the final divorce decree in the divorce case." Dkt. 18 at 4. Suzanne refers to these pre-divorce assets as the "Loaned Assets." *Id.* Suzanne also alleges that post-divorce, but during a pending arbitration related to the divorce, "Avi transferred various assets and distributed over $4 million he received from the transfer transactions." *Id.* at 8. This allegedly included "$1.3 million" that Avi "transferred . . . to the Trust's

counsel in Israel to make a payment on a real estate purchase contract Avi claimed to be a Trust contract he had entered into during the divorce case." *Id.* This single $1.3 million transfer is the only post-divorce transfer Suzanne specifically mentions in the Amended Complaint.

Based on the alleged illegal transfers, Suzanne sued Avi, asserting the following causes of action: (1) declaratory judgment related to the Loaned Assets; (2) violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), TEX. BUS. & COMM. CODE § 24.001 *et seq.,* related to the alleged transfer of the Loaned Assets and the $1.3 million sent to the Trust's counsel in Israel; and (3) conversion of the Loaned Assets.

Avi now moves to compel this case to arbitration before Levin. In the alternative, Avi argues that if only part of the case is sent to arbitration, I should stay this case pending arbitration.

## COMPELLING ARBITRATION: THE LEGAL STANDARD

The Fifth Circuit has established a two-step inquiry for determining whether the parties have agreed to arbitrate a claim. *See Edwards v. Doordash, Inc.*, 888 F.3d 738, 743–44 (5th Cir. 2018). First, I must decide "whether the parties entered into *any arbitration agreement at all.*" *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This inquiry is a question of contract formation that looks at whether the parties formed a valid agreement to arbitrate some set of claims." *Henderson v. A&D Interests, Inc.*, No. 3:17-CV-096, 2018 WL 1240431, at *1 (S.D. Tex. Mar. 9, 2018). To make this determination, I am required to "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

3

In doing so, I must consider whether the arbitration agreement may be invalidated by contract defenses such as unconscionability. *See Poole-Ward v. Affiliates for Women's Health, P.A.*, 283 F. Supp. 3d 595, 598 (S.D. Tex. 2017). "[A] party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004). Second, if there is a valid agreement to arbitrate, I am required to determine "whether the current dispute falls within the scope of a valid agreement." *Edwards*, 888 F.3d at 743.

It is worth noting that the Federal Arbitration Act ("FAA") "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004) (internal quotation marks and citation omitted). The FAA "leaves no place" for the court to exercise discretion. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). As a result, I must order the parties to arbitrate issues covered by a valid arbitration agreement. *See id.*

## ANALYSIS

**A.    IS THERE A VALID AGREEMENT TO ARBITRATE?**

I must first decide whether an enforceable agreement to arbitrate was formed. Avi claims that he and Suzanne entered into two agreements to arbitrate. First, he claims that the MSA is an agreement to arbitrate. Next, Avi contends that a 2018 conversation about arbitration between his counsel and Suzanne's counsel "establish[es] . . . a second agreement to arbitrate." Dkt. 31 at 11. Because I resolve this dispute based solely on the MSA, I begin with the MSA and do not reach the purported second agreement to arbitrate.

4

Under Texas Law, "[t]he elements of an enforceable contract are: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) a communication that each party consented to the terms of the contract; (5) execution and delivery of the contract with an intent it become mutual and binding on both parties; and (6) consideration." *Coleman v. Reich*, 417 S.W.3d 488, 491 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Avi has presented the MSA, which he, his counsel, Suzanne, and her counsel all signed. *See* Dkt. 32 at 3. In the MSA, Avi and Suzanne "jointly release[d] each other from any and all claims through the date thereof." *Id*. Further, the MSA provides that "[i]f any portion of this Agreement is not enforceable for any reason, the reminder [sic] of the Agreement shall be enforceable." *Id*. Lastly, the MSA includes a broad arbitration provision requiring Avi and Suzanne "to submit any dispute related to this Agreement to Alan Levin for binding arbitration." *Id*. I find that the signed MSA and its detailed provisions amount to prima facie evidence of contract formation. *See Ridge Nat. Res., L.L.C. v. Double Eagle Royalty, L.P.*, 564 S.W.3d 105, 120–21 (Tex. App.—El Paso 2018, no pet.) ("The signed . . . contract sets out the terms of the underlying transaction, and the arbitration clause evinces a mutual intent to arbitrate. As such, . . . there is prima facie evidence of formation.").

But this does not end my inquiry because "the burden [now] shifts to [Suzanne] to bring forth arguments or evidence that would undermine contract formation." *Id.* at 121. Suzanne has presented one argument meant to undermine contract formation. She claims

5

that "the arbitration provision is substantively unconscionable" and, on that basis, I "should deny Avi's Motion to Compel Arbitration." Dkt. 39 at 23.

Under Texas law, "[u]nconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). "[C]ourts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision." *Id.* at 572.

Because arbitration is a favored method of dispute resolution, the Texas Supreme Court has cautioned that courts "'should be wary of setting the bar for holding arbitration clauses unconscionable too low' as that would undermine the 'liberal federal policy favoring arbitration agreements.'" *Venture Cotton Coop v. Freeman*, 435 S.W.3d 222, 232 (Tex. 2014) (quoting *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 893 (Tex. 2010)). Thus, a party opposing arbitration on the grounds of unconscionability bears the heavy burden of proving this defense. *See id.*

The test for substantive unconscionability is whether, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001).

To meet her burden, Suzanne argues as follows:

> The MSA was the result of a very long mediation involving mediator Alan Levin. Levin is named in the MSA as the arbitrator. Levin is a material fact witness as to issues relating to the validity, scope, terms and effectiveness of the MSA. Additionally, the MSA includes no rules for the arbitration or for Levin's disqualification.

Dkt. 39 at 6. Further, Suzanne contends that based on Levin's prior service as mediator, "Mr. Levin has a conflict of interest if he serves as arbitrator," the MSA "does not contain any waiver of such conflict of interest," and "there is no procedural mechanism for addressing the apparent conflict of interest." *Id.* at 23. I am not persuaded by these arguments.

The core of Suzanne's arguments seems to be that there is something untoward about a mediator serving as arbitrator in the same matter. This supposition stands in the face of clear Texas law indicating otherwise. Texas courts have held "that a mediator can serve as an arbitrator in the same matter with the parties' consent, because the parties know that information disclosed to the mediator during mediation can be used by the mediator in making an arbitration decision." *In re Provine*, 312 S.W.3d 824, 830 (Tex. App.—Houston [1st Dist.] 2009, no pet.). This holding undermines the notion that the same individual cannot serve as both mediator and arbitrator in the same proceeding; it makes plain that the parties' consent simply overcomes any argument based on a supposed conflict of interest created when an individual serves in both roles.

Moreover, Suzanne has not sufficiently supported her argument about calling Levin as a material fact witness. Citing *Alford v. Bryant*, 137 S.W.3d 916, 923 (Tex. App.—Dallas 2004, pet. denied), Suzanne argues that she "has the right to call Levin as a witness in any proceeding relating to the creation and intent of the MSA." Dkt. 39 at 22. I have

7

reviewed *Bryant*. In that case, the party seeking to call the mediator as a witness had to establish that "the information sought was likely outcome determinative" and "the mediator's testimony is the principle means by which [the party] can obtain and present unbiased and critical evidence to the trier of fact." *Bryant*, 137 S.W.3d at 922. Suzanne has not presented any evidence or argument on these points.

In my view, Avi and Suzanne both consented to Levin serving as arbitrator, as evinced by the executed MSA. Suzanne has not stepped forward with any evidence that Avi maintained an advantaged position during the mediation, indicating that the resulting MSA is unfairly one-sided. Accordingly, I reject Suzanne's effort to invalidate the agreement to arbitrate based on unconscionability.

**B. THE PRESENT DISPUTE FALLS WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT**

Now that I have determined that there is a valid agreement to arbitrate some set of claims, I must decide whether Suzanne's claims fall within the scope of the MSA. As mentioned above, the MSA contains an extremely broad arbitration clause that requires Avi and Suzanne to "submit *any dispute related to* this Agreement to Alan Levin for binding arbitration." Dkt. 32 at 3. Avi contends that Suzanne's claims relate to the MSA because such claims implicate the MSA's release clause, which provides that he and Suzanne "jointly release each other from any and all claims through the date thereof." *Id.*

"[C]ourts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that

'relate to' or 'are connected with' the contract." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998).

> Broad arbitration clauses are not limited to claims that literally "arise under the contract," but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute. An arbitration clause that covers disputes "arising under" an agreement, but omits reference to claims "relating to" an agreement, covers only those disputes relating to the interpretation and performance of the contract itself.

*DXP Enters., Inc. v. Goulds Pumps, Inc.*, No. CIV.A. H-14-1112, 2014 WL 5682465, at *4 (S.D. Tex. Nov. 4, 2014) (internal quotation marks, ellipsis, brackets, and citations omitted). When, as is the case here, the arbitration clause is broad—i.e., applying to any dispute related to the MSA—"it is only necessary that the dispute 'touch' matters covered by the [MSA] to be arbitrable." *Pennzoil*, 139 F.3d at 1068.

When a broad agreement to arbitrate binds the parties and one party asserts that some claims are excluded from that agreement, "in the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Tech., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584–85 (1960)). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said *with positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (emphasis added).

Based on my review of the MSA, it seems clear to me that the arbitration provision is extremely broad. The release clause, which explicitly applies to "any and all claims," is

9

also extremely broad. Dkt. 32 at 3. Although Avi seeks to link those two broad clauses to demonstrate that Suzanne's claims are related to the MSA, I'm not sure such a link is necessary. Suzanne's Amended Complaint, which generally alleges that Avi fraudulently disposed of community property rightfully owed to Suzanne or the Trust, repeatedly references the MSA. For example, Suzanne specifically alleges:

> The [MSA] was the result of Avi's fraud, breach of fiduciary duties and other defects. Dkt. 18 at 7;
>
> If the [MSA] is valid, Suzanne is a creditor of Avi under the [MSA]. *Id.* at 8; and
>
> [T]he $1.3 million transfer was a fraudulent transfer and was done to hinder, delay or defraud Suzanne as creditor under the Equalization Judgment and/or the [MSA]. *Id.*

These factual allegations, alone, clearly evince that Suzanne's claims touch matters covered by the MSA. The release clause only provides further indication that Suzanne's claims touch matters covered by the MSA.

Suzanne has presented many arguments attacking the scope of the release clause. *See* Dkt. 39 at 15–17. None of those arguments amount to "forceful evidence" that the MSA reflects "a purpose to exclude [her now asserted] claim[s] from arbitration." *AT & T Tech.,* 475 U.S. at 650 (quotation marks and citation omitted). Thus, I cannot say "*with positive assurance* that the arbitration clause is not susceptible of an interpretation that covers [Suzanne's claims]." *Id.* (emphasis added). Consequently, the Motion to Arbitrate should be granted.

***

In sum, I find that the MSA is an enforceable agreement to arbitrate, the MSA is not unconscionable under Texas law, and the present dispute falls within the scope of the MSA's arbitration clause. As a result, this case should be sent to arbitration before Alan Levin.[1]

### CONCLUSION

Because Avi has shown both that a valid arbitration agreement exists and that Suzanne's claims fall within its scope, I **RECOMMEND** that the Motion to Arbitrate be **GRANTED** and this case be compelled to arbitration in accordance with the terms of the MSA.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Houston, Texas, this 5th day of February, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[1] Suzanne also argues that I should remove Levin as the arbitrator, given her desire to call Levin as a witness. *See* Dkt. 39 at 24. I decline to do so. As explained above, the parties expressly agreed to Levin serving as the arbitrator, well aware of his involvement in the mediation. I will not second guess the parties negotiated selection.